JAMES P. COLEMAN AND MARY R. COLEMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coleman v. Commissioner
Docket No. 8884-77.
United States Tax Court
T.C. Memo 1979-255; 1979 Tax Ct. Memo LEXIS 270; 38 T.C.M. (CCH) 1020; T.C.M. (RIA) 79255; July 9, 1979, Filed James P. Coleman and Mary R. Coleman, pro se. Albert L. Sandlin, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Francis J. Cantrel, pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *272 OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: Respondent, in his notice of deficiency dated July 22, 1977, determined a deficiency of $569.72 in petitioners' Federal income tax for the year 1975. In fact, the total amount includes an income tax deficiency of $479.72 and an excise tax deficiency of $90 on "excess contributions" made to the individual retirement account e8IRA) of James P. Coleman (hereinafter referred to as petitioner) under the provisions of section 4973. [3]
There are two issues for decision: (1) Whether petitioners are entitled to a deduction of $1,500 for a contribution to an IRA under section 219, and (2) whether petitioners are liable for an excise tax of six percent (i.e., $90) for an "excess contribution" to an IRA under section 4973. [4]
*273 The petition was filed under the small tax case procedures provided for in section 7463. However, since one of the disputed issues (the excise tax issue) involves a tax imposed by subtitle D of the Internal Revenue Code of 1954, it is not within the category of cases covered by section 7463 (i.e., income, estate, and gift tax cases). Accordingly, an order was issued removing this case from the procedures applicable to small tax cases. [5]
FINDINGS OF FACT Petitioners resided at 8 Sandhill Crane, Hilton Head Island, South Carolina, at the time they filed their petition herein. They filed a joint 1975 Federal income tax return with the Internal Revenue Service. On that return they claimed a deduction of $1,500 for a contribution made to an IRA. On or about July 10, 1970, Sea Pines Plantation Co. (Sea Pines) of Hilton Head Island, South Carolina, a corporation engaged in the real estate business, filed an Application for Determination with the Internal Revenue Service. Thereby said corporation sought to obtain initial qualification for a retirement plan (plan) for its employees. *274 The name of the plan was "Group Annuity Contract Number GR-1473" and the trustee thereof was the Travelers Insurance Co. of Hartford, Connecticut. The plan, effective on September 1, 1969, was formally adopted by Sea Pines on September 25, 1969, and thereafter executed by two corporate officers on November 18, 1969. Sea Pines was notified by the Internal Revenue Service that the plan met the requirements of the Internal Revenue Code (section 401). The plan provided, in pertinent part, that-- 2.1 Each Employee will be included in this Plan on the first September 1, commencing September 1, 1969, coincident with or next following the date he has completed three years of Continuous Service. * * *
10.4 No contribution shall be required of any Employees. The Company shall pay the full cost of providing the benefits under this Plan and shall pay any and all other costs incident to the operation hereof. * * *
12.1 The Company intends to continue this Plan and payment of contributions therefor indefinitely; but continuance of this Plan is not assumed as a contractual obligation, or other obligation, of the Company and the right is reserved by the Company to reduce, *275 suspend, or discontinue its contributions hereunder at any time. * * *
By letter dated December 17, 1975, Sea Pines advised the Internal Revenue Service in relevant part as follows-- The purpose of this letter is to inform you of our objective and commitment to modify the present Sea Pines Company Retirement Program as of December 31, 1975.
The current and short term cash and cash flow positions of the Company do not permit continuation of the attached program in its present form. Specifically, we intend to terminate coverage for those salaried exempt employees with base salaries of $18,000 or higher. * * * (Emphasis added.) Petitioner, along with all other employees of Sea Pines, was advised of the modification of its plan, and he had a base salary considerably in excess of $18,000 in 1975. On December 31, 1975, petitioner personally established an IRA at the South Carolina Federal Savings and Loan at which time he tendered a check in the amount of $1,500. Petitioner was covered by or included in the Sea Pines' plan in 1975. OPINION Petitioners, in essence, maintain that they had no vested interest in any retirement plan prior to the end of 1975 and *276 the establishing of an IRA on the last day of that year was within the spirit of the law. Accordingly, they urge they are entitled to the disputed deduction. [6] Respondent, on the other hand, maintains that they are not so entitled because petitioner was an active participant in the plan "at some time" in 1975. We agree with respondent. Petitioner commenced his employment as a full time employee with Sea Pines *277 in "either '72 or '73" and was continuously so employed up to and including May 12, 1977, at which time he was vice-president in charge of sales. His imprecise testimony that he was employed in "either '72 or '73" is of his own making and leaves us without a certain employment date. In that posture and based upon the record as a whole we hold that petitioner had completed three years of continuous service with Sea Pines at September 1, 1975, and, thus, we have found as a fact that he was included in the plan in that year. Our holding is buttressed by other factors. Petitioner admitted on cross-examination that he was covered under the plan from January 1, 1975, through December 31, 1975, and that had he died prior to December 17, 1975, his widow would have received benefits under the plan. [7]
Generally, section 219(a) allows a deduction from gross income for cash contributions made to an IRA. However, section 219(b)(2) states in pertinent part: * * * No deduction is allowed under subsection (a) for *278 an individual for the taxable year if for any part of such year--
(A) he was an active participant in-- (i) a plan described in section 401(a) * * *. (Emphasis added.) Section 219 does not advise us as to what an "active participant" means. Nonetheless, we are aided in that respect by the report of the Ways and Means Committee of the U.S. House of Representatives which relates: An individual is to be considered an active participant in a plan if he is accruing benefits under the plan even if he only has forfeitable rights to those benefits. Otherwise, if an individual were able to, e.g., accrue benefits under a qualified plan and also make contributions to an individual retirement account, when he later becomes vested in the accrued benefits he would receive tax-supported retirement benefits for the same year both from the qualified plan and the retirement savings deduction.* * * H. Rept. 93-807, 93d Cong., 2d Sess., 1974-3 C.B. (Supp.) 236, 364. [8]
*279 The record herein clearly shows that petitioner was an employee included in Sea Pines' plan during 1975 and, hence, an active participant in its qualified plan for at least some part of that year. Petitioners, therefore, are not entitled to deduct the IRA contribution made in that year. [9]
Section 4973 imposes an excise tax of six percent on any "excess contributions" made during the taxable year to an IRA. Since under section 219, as applicable in 1975, petitioner was entitled to no deduction, the entire contribution was in excess of the amount deductible for that year and, consequently, on the facts extant in this case, the six percent excise tax is clearly *280 applicable. Orzechowski v. Commissioner,69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that Rule are not applicable to this case.
3. Respondent incorrectly characterized the entire $567.72 as an income tax in his notice of deficiency. Only $479.72 represents the income tax deficiency. The remainder ( $90) is an excise tax deficiency. See sec. 6211(a)(1), I.R.C. 1954↩, as amended, for the definition of a deficiency.
4. This issue was never formally argued or briefed by the parties. Nonetheless, it is part of respondent's determination and we will decide it. Argument and briefing thereon are unnecessary since imposition of the excise tax liability follows directly from an adverse determination of the contribution issue. There is no stipulation of facts. The evidence consists entirely of testimony and exhibits.↩
5. See Historic House Museum Corp. v. Commissioner,70 T.C. 12↩ (1978).
6. In that connection, petitioner testified "My position, Your Honor, is very simply that at the end of 1975, having been informed by my company that I had no retirement benefits with the company any longer. During the -- 1975 I think, is the year Congress passed the Individual Retirement Account Law and I simply took advantage of the intention and spirit of that law which was to provide for retirement benefits, for persons not otherwise covered, and as of -- during that year, as of the last day of the year, I was not covered in any way, by any retirement plan." We are further advised by petitioner (ex. 7-G), "At the beginning of 1975 my employer, Sea Pines Company, had a retirement program in which I participated↩ but was not yet vested in." (Emphasis added.)
7. December 17, 1975, is the date of Sea Pines' letter to the Internal Revenue Service, parts of which are noted in this opinion, advising of the modification of its plan.↩
8. We note that on March 23, 1979, the Internal Revenue Service, upon completion of its reconsideration of its regulations defining an "active participant", issued revised proposed regulations (44 Fed. Reg. 17754↩) defining the term "active participant" for those individuals who participate in retirement plans described in section 219(b)(2). The provisions of those regulations, which are not final, are effective for taxable years beginning after December 31, 1978.
9. See 6 rzechowski v. Commissioner,69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979), where such a deduction was not allowed; Pervier v. Commissioner,T.C. Memo. 1978-410, where a deduction was denied to an IRA contributor under section 219 because he became an active participant in a qualified plan on the last day of the taxable year; Goldstein v. Commissioner,T.C. Memo. 1978-480; Foulkes v. Commissioner,T.C. Memo. 1978-498↩.